CARL M. J. AAGAARD AND EARLA G. AAGAARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; KENLEY W. FALCONER AND LOLITA E. FALCONER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Aagaard v. Commissioner
Docket Nos. 13770-80, 13773-80.
United States Tax Court
T.C. Memo 1985-194; 1985 Tax Ct. Memo LEXIS 435; 49 T.C.M. (CCH) 1278; T.C.M. (RIA) 85194; April 23, 1985. *435 Petitioner-husbands are doctors, who operated their medical practice through a partnership. Petitioner-husbands purportedly transferred most of the partnership assets to a trust, and assigned all of the partnership income to the trust.Petitioner-husbands continued to use the partnership assets in their medical practice. Petitioners in each docket also purportedly transferred to a family trust certain personal assets, their lifetime personal services (except for their medical services) and all remuneration therefrom, and their beneficial interests in the first trust. Petitioners continued to use their personal assets. Held: (1) The trusts were devoid of economic reality and are not recognizable for Federal income tax purposes. (2) Petitioners are liable for additions to tax under section 6653(a), I.R.C. 1954. Gloria T. Svanas, for the petitioners. Deborah A. Butler, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax and additions to tax under section 6653(a)[1] *436 (negligence, etc.) against petitioners for 1976 as follows: [2]
Addition to Tax
Docket No.
Petitioners
Deficiency
Sec. 6653(a)
13770-80
Aagaard
[3] $29,158.00
$1,457.90
13773-80
Falconer
$13,537.00
$ 676.85
These cases have been consolidated for trial, briefs, and opinion. After a concession by petitioners, the issues for decision are as follows: (1) Whether income and expenses are attributable to petitioners or to the Aagaard Falconer Business Trust, the Aagaard Family Equity Trust, and the K. W. Falconer Equity Trust; and (2) Whether petitioners are liable for additions to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petitions in the instant cases were filed, all the petitioners resided in Ukiah, California. Petitioners Carl M. J. *437 Aagaard (hereinafter sometimes referred to as "Carl") and Earla G. Aagaard (hereinafter sometimes referred to as "Earla"), are husband and wife; petitioners Kenley W. Falconer (hereinafter sometimes referred to as "Kenley") and Lolita E. Falconer (hereinafter sometimes referred to as "Lolita"), are husband and wife. Carl, Earla, and Kenley are licensed physicians in the State of California, and were so licensed in 1976. During 1976, Earla was a practicing psychiatrist, and Carl and Kenley were practicing pathologists. Lolita was not employed outside her home. In 1972, Carl and Kenley formed a partnership named Aagaard and Falconer Pathologists (hereinafter sometimes referred to as "the partnership"). The partnership continued through at least 1976. Carl and Kenley were the only two doctors practicing for the partnership. Neither Carl or Kenley practiced medicine outside of the partnership during 1976. Carl and Kenley each held a 50-percent interest in the income and assets of the partnership. Before and during 1976, the partnership had an office practice, and also operated pathology laboratories in two hospitals. The hospitals contracted only with the partnership with respect *438 to the laboratories. During 1973 or 1974, Carl's son, Victor Aagaard (hereinafter sometimes referred to as "Victor"), who was then a student at Pacific Union College, told carl about certain trusts being promoted by Educational Scientific Publishers (hereinafter sometimes referred to as "ESP"). As a result of Victor's story, Carl visited Charles Dugan (hereinafter sometimes referred to as "Dugan"), who was on the faculty of Pacific Union college. Dugan gave Carl some materials about the ESP trusts. During 1975, Dugan came to Ukiah and gave a seminar about the ESP trusts. Carl, some other medical people and their wives, and other local people attended the seminar. At the seminar, Carl received some additional materials about the ESP trusts. Carl gave some of the materials to his accountant and some to his attorney. Sometime after the three trusts described infra were created, Carl's attorney told Carl that he could not give an opinion relating to the ESP trusts, and offered to refer Carl to another law firm. In late 1975, Carl purchased various preprinted materials from ESP through Dugan for about $8,800. These materials were used by Carl in connection with the creation and *439 operation of the Aagaard Falconer Business Trust and the Aagaard Family Equity Trust. In the notices of deficiency, respondent disregarded the three trusts described infra and made adjustments in order to tax petitioners as if the trusts had not been created. I. The Aagaard Falconer Business Trust
About December 13, 1975, Carl, Kenley, and Lolita executed a document captioned "Declaration of Trust of the Aagaard Falconer Business Trust" (hereinafter sometimes referred to as "the business trust"). The business trust document provides, in pertinent part, as follows: CERTIFICATES OF INTEREST For convenience, the equitable interests for distribution shall be divided into One Hundred (100) Units, in certificate form. They shall be non-assessable, non-taxable, non-negotiable, and non-transferable except upon the express written and unanimous consent of the Trustees. The lawful owner may, if he so desires, cause his beneficial certificate to be registered with the Secretary of the Trustees. Nothing herein contained shall be construed to authorize the Trust to issue Certificates of Beneficial Interest in excess of the number herein provided, nor for a nominal value at variance with the *440 provisions hereof. * * * DURATION-CLOSURE This Trust shall continue for a period of twenty-five years from date, unless the Trustees shall unanimously determine upon an earlier date. The Trust shall be proportionately and in pro rata manner distributed to the beneficiaries. In the event this instrument has been recorded for public notice, the Trustees shall then file a notice that the Trust shall terminate and cease, and thereupon, the Trustees shall automatically be discharged hereunder, provided, their administration and distribution has been made in good faith; otherwise a court of equity may be invoked to review and correct any tort or error. * * * PURPORT The purport of this instrument is to convey to Trustees to constitute a Trust for the benefit of the beneficiaries, held by the Trustees, in trust and in joint tenancy for the duration hereof, and to provide for an economical administration of the Trust corpus, including the effective management of Trust business and to make distributions of income or corpus to the beneficiaries on a pro rata basis in amounts determined in the discretion of the Trustees. The initial trustees of the business trust were Carl and Lolita. On December *441 30, 1975, Kenley became a trustee of the trust. Lolita resigned on December 31, 1975. Carl and Kenley were the sole trustees of the business trust during 1976. Actions taken by the business trust required the approval of a majority of the trustees. On December 13, 1975, Kenley purportedly conveyed all of the supplies and equipment, and some cash, owned by the partnership to the business trust. The partnership retained its accounts receivable. On January 5, 1976, the business trust purportedly entered into an agreement with the partnership which provides that the business trust will furnish space, equipment, personnel, and various services to the partnership in exchange for the "total proceeds (gross income)" of the partnership. Under the agreement, the partnership is required to provide professional liability insurance for Carl, Kenley, and the business trusts' personnel. On December 30, 1975, Kenley received 100 units of beneficial interest of the business trust, which constituted all the units of beneficial ownership of the business trust. Kenley transferred 50 units to Carl on December 30, 1975. At or about this time, Carl transferred 50 units to the Aagaard Family Equity Trust *442 and Kenley transferred 50 units to the K. W. Falconer Equity Trust. The units of beneficial interest conveyed to the owner solely the "emoluments" as distributed by the action of the trustees. The certificates conveyed no interest in the business trust assets, or in the management of the business trust. Carl and Kenley were the business trust's executive trustee and executive secretary, respectively, having been nominated, elected, and appointed to these positions on December 30, 1975. Carl and Kenley opened a bank account for the business trust. Carl and Kenley had signature authority on the business trust bank account. All decisions concerning the business trust were made by Carl and Kenley. The business trust filed a Federal Fiduciary Income Tax Return, Form 1041, for 1976. II. The Aagaard Family Equity Trust
On January 4, 1976, Carl executed a document captioned "Declaration of Trust of This Pure Trust". The trust indenture was published by ESP and consisted of a preprinted form with blank spaces provided for applicable names. The trust was entitled the "Aagaard Family Equity Trust" (hereinafter sometimes referred to as "the Aagaard trust"). The initial trustees of the Aagaard *443 trust were Earla's father, J. E. Gardner (hereinafter sometimes referred to as "Gardner"), and Earla. On January 4, 1976, Carl became a trustee of the Aagaard trust. Gardner resigned on April 30, 1976. Victor was appointed a trustee on May 1, 1976. On or about January 6, 1976, Carl purportedly conveyed to the Aagaard trust various items of real and personal property and Carl's "lifetime services including ALL of his earned remuneration accruing therefrom, from ANY current source whatsoever". On January 6, 1976, Carl purportedly leased five cars and an airplane to the Aagaard trust for $1 per month each plus the payment of any existing liens on the vehicles. On January 8, 1976, the Aagaard trust waived its right to the net income from Carl's medical practice. On or about January 4, 1976, Carl received 100 units of beneficial interest, which constituted all the units of beneficial ownership of the Aagaard trust. Carl transferred 50 units to Earla on January 4, 1976. On January 15, 1976, Carl transferred five units to Carla June Davidson, five units to Earl M. J. Aagaard, 20 units to Victor, and 20 units to Lola Jean Aagaard, Carl's children. The units of beneficial interest conveyed *444 to the owner solely the "emoluments" as distributed by the action of the trustees. The certificates conveyed no interest in the Aagaard trust assets, or in the management of the Aagaard trust. Carl and Earla were the Aagaard trust's executive trustee and executive secretary, respectively, having been nominated, elected, and appointed to these positions on January 5, 1976. Carl and Earla opened bank accounts for the Aagaard trust. Carl and Earla had signature authority on the bank accounts. All decisions concerning the Aagaard trust were made by Carl and Earla. III. The K. W. Falconer Equity Trust
On December 11, 1975, Kenley executed a document captioned "Declaration of Trust of This Pure Trust". The trust indenture was published by ESP and consisted of a preprinted form with blank spaces provided for applicable names. The trust was entitled the "K. W. Falconer Equity Trust" (hereinafter sometimes referred to as "the Falconer trust"). The initial trustees of the Falconer trust were Dugan and Lolita. On December 11, 1975, Kenley became a trustee of the Falconer trust. Dugan resigned on December 31, 1975. On December 11, 1975, Lolita purportedly conveyed her interest in certain *445 properties and her lifetime services to Kenley in order to facilitate reconveyance to the Falconer trust. On December 31, 1975, Kenley purportedly conveyed to the Falconer trust various items of real and personal property, including Kenley and Lolita's personal residence, three parcels of land, the contents of the residence, life insurance policies, a loan receivable, and a savings account. Additionally, Kenley purportedly conveyed to the Falconer trust the exclusive use of his and Lolita's "lifetime services and all of the currently earned remuneration accruing therefrom". On December 11, 1975, the Falconer trust waived its rights to the net income from Kenley's medical practice. On December 31, 1975, Kenley received 100 units of beneficial interest, which constituted all the units of beneficial ownership of the Falconer trust. Kenley transferred 50 units to Lolita on December 31, 1975. Also on December 31, 1975, Kenley transferred 25 units to Jon Alexander Falconer and 25 units to Judith Ann Falconer, the children of Kenley and Lolita. The units of beneficial interest conveyed to the owner solely the "emoluments" as distributed by the action of the trustees. The certificates *446 conveyed no interest in the Falconer trust assets, or in the management of the Falconer trust. Kenley and Lolita were the Falconer trust's executive trustee and executive secretary, respectively, having been nominated, elected, and appointed to these positions on December 31, 1975. All decisions concerning the Falconer trust were made by Kenley and Lolita. Kenley and Lolita used the Falconer trust bank accounts to pay their personal expenses, including their childrens' college expenses and maintenance of their personal residence. After Kenley and Lolita's residence and household goods were purportedly transferred to the Falconer trust, Kenley and Lolita continued to live in the residence and use the household goods. * * * The Aagaard trust and the Falconer trust are hereinafter sometimes referred to as "the family trusts". The family trusts and the business trust did not have any economic substance during 1976. OPINION I. The Trusts
Petitioners maintain that the business trust was a separate business entity operated for specific service purposes; that the Aagaard trust and the Falconer trust managed and conserved their own assets; and that the three trusts were legally established *447 under State law, and functioned and should be recognized as taxpaying entities. [4] Respondent contends that the income earned by the three trusts is includible in petitioners' income under sections 61 and 671 through 677. Respondent's argument under section 61 is based upon two propositions: (1) the trusts lack economic reality and are mere paper shams used for tax avoidance purposes; and (2) the trusts effect an anticipatory assignment of income. Respondent also contends that the grantor trust provisions of sections 671-677 apply. We agree with respondent. A. The Family Trusts
With respect to the Aagaard trust and the Falconer trust, it is clear that these cases involve merely another attempt to escape taxation by transferring property to a "family trust". On numerous occasions this Court and the United States Courts of Appeals have considered similar attempts and the taxpayers' attempts to shift the incidence of taxation have been rejected. *448 E.g., Holman v. United States,728 F.2d 462 (CA10 1984); Hanson v. Commissioner,696 F.2d 1232 (CA9 1983), affg. a Memorandum Opinion of this Court; [5]Schulz v. Commissioner,686 F.2d 490 (CA7 1982), affg. Memorandum Opinions of this Court; [6]Gran v. Commissioner,664 F.2d 199 (CA8 1981), affg. a Memorandum Opinion of this Court; [7]Luman v. Commissioner,79 T.C. 846 (1982), and cases cited therein at 852, n.4. We have held that a "family trust" lacked economic substance and was a nullity for Federal income tax purposes. Hanson v. Commissioner,supra;Markosian v. Commissioner,73 T.C. 1235 (1980). The instant cases present nothing which would support a different result. The record does not show that, after creation of the Aagaard trust and the Falconer trust, there was any change in petitioners' use of the respective trusts' assets, or petitioners' full control over the income generated by the respective trusts' assets. For the reasons carefully explained in Markosian v. Commissioner,supra, we have found that the Aagaard trust and the Falconer trust lacked economic substance and thus we *449 conclude they are not recognizable for Federal tax purposes. Since we have determined that the Aagaard trust and the Falconer trust are not recognizable for Federal income tax purposes, we need not address respondent's additional arguments in any great detail. However, it is clear that respondent's application of assignment of income principles and the grantor trust provisions to these trusts is also proper. See, e.g., Holman v. United States,supra;O'Donnell v. Commissioner,726 F.2d 679 (CA11 1984), affg. an Order of this Court; Hanson v. Commissioner,supra;Vnuk v. Commissioner,621 F.2d 1318 (CA8 1980), affg. a Memorandum Opinion of this Court; [8]Luman v. Commissioner,supra;Vercio v. Commissioner,73 T.C. 1246 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978). We hold for respondent on this issue. We hold for respondent on this issue. B. The Business Trust
With respect to the business trust, it is clear that no substantial change in economic ownership of the assets or income of Carl and Kenley's medical practice was effected by their purported transfer of the partnership's assets, and the assignment of the partnership's income, to the business trust *450 (and onward to the family trusts). First, the documents which purport to establish the business trust as an entity separate and distinct from the partnership (the Declaration of Trust of the business trust and the January 5, 1976, agreement between the partnership and the business trust) fail to alter any cognizable economic relationship between Carl and Kenley and the property purportedly transferred. Before the purported creation of the business trust, Carl and Kenley each owned a one-half interest in the income and assets of their medical practice. They retained identical interests (through the sham family trusts) after the arrangements with the business trust were entered into. Before the purported creation of the business trust, Carl and Kenley jointly exercised complete control over the activities of their medical practice through their partnership arrangement. They retained the same joint control after the arrangements with the business trust were entered into. Thus, we cannot conclude that any economic interest passed to anyone other than Carl and Kenley, or that Carl's and Kenley's relationships to the income and assets of their medical practice were effectively altered, *451 as a result of the purported creation of the business trust. Professional Services v. Commissioner,79 T.C. 888, 925-926 (1982); Markosian v. Commissioner,supra.
Second, the record fails to establish that the business trust carried on any business activity. With the exceptions of opening up a bank account in its own name, and filing a Federal Fiduciary Income Tax Return, Form 1041, the record does not establish that the business trust had any contacts with unrelated third parties. Carl admitted that the contracts with the hospitals for the operation of the laboratories were with the partnership, not with the business trust. The only contracts placed into evidence which the business trust purportedly entered into were contracts with the partnership and the family trusts. Although Carl testified that the partnership's employees became employees of the business trust, nothing else in the record supports Carl's conclusory testimony, or establishes that the employees were aware of, or agreed to, this change in status. Also, the partnership remained responsible for providing professional liability insurance covering the business trust's purported employees. Based on the record in the *452 instant cases, we conclude that petitioners have failed to prove that the business trust carried on a business after its creation. Third, petitioners contend that there was a valid business purpose for the formation of the business trust, which was to protect the partnership's assets from medical malpractice claims. This purpose (limitation of liability) in many cases does constitute a valid business purpose (at least, for the creation of a corporation). Davis v. Commissioner,64 T.C. 1034, 1044 (1975). In the instant cases, however, nothing in the record shows that the creation of the business trust actually provided any such protection. Most importantly, the record fails to show that petitioners received, or even asked for, advice from competent counsel that the creation of the business trust would serve to protect the partnership's assets from medical malpractice claims. Under the circumstances, we do not believe that this asserted purpose was in fact a purpose for the creation of the business trust; it was, at most, a plausible afterthought. Aldon Homes, Inc. v. Commissioner,33 T.C. 582, 598 (1959). For these reasons, we have found that the business trust lacked economic *453 substance and thus we conclude it is not recognizable for Federal tax purposes. Holman v. United States,supra;Hanson v. Commissioner,Supra;Professional Services v. Commissioner,supra;Markosian v. Commissioner,supra.
Respondent has three arrows in his quiver. Cf. Estate of Fusz v. Commissioner,46 T.C. 214, 215 n. 2 (1966). We have already concluded that one of these arrows has hit the mark. We do not believe it would be useful to explore the applicability of the assignment of income doctrine and the grantor trust provisions (secs. 671 through 677), since any conclusion we might reach on these points could not change the result in the instant cases. We hold for respondent on this issue. II. Additions to Tax --Section 6653(a)
An addition to tax under section 6653(a) is imposed if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations. Petitioners have the burden of proving that their underpayments of tax were not due to negligence or intentional disregard of rules and regulations. Hanson v. Commissioner,696 F.2d at 1234. Not only have petitioners failed to carry this burden, but the record is clear that petitioners were *454 negligent and intentionally disregarded rules and regulations. It appears that petitioners embarked on their scheme solely in reliance on the claims of Dugan. The attorney that Carl did consult with did not give an opinion that the trust scheme would produce the desired results. Indeed, "[n]o competent lawyer could" so advise him. Hanson v. Commissioner,696 F.2d at 1234. Although Carl testified that he also asked an accountant for advice, the record fails to disclose what advice, if any, that accountant provided, or that the accountant was qualified to give any advice on this matter. No evidence was presented which would suggest that the other three petitioners relied on anyone but Carl. Petitioners appear to be well-educated individuals; they had to know that their scheme was in conflict with clear principles of Federal income tax laws. In fact, Carl testified that when he first was told of the trust scheme "the first thing I said was, Vic, it sounds crazy; it is too good to be true". Carl's first impression was, unfortunately for petitioners, the correct one. As the Court of Appeals for the Ninth Circuit stated, "No reasonable person would have trusted this scheme to work." *455 Hanson v. Commissioner,supra at 1234. Petitioners cite Hoelzer v. Commissioner,T.C. Memo. 1982-6, for the proposition that the section 6653(a) addition to tax should not be imposed if a taxpayer shows good faith reliance on ESP. Our reading of the opinion in Hoelzer indicates that the petitioners therein relied on an independent accountant who signed as preparer of their income tax returns. As noted above, the record in the instant cases fails to establish any similar reliance. Finally, petitioners contend that it is improper to impose the section 6653(a) addition to tax because the year in issue is 1976, and no court had ruled on the Federal tax consequence of family trusts as of that time. However, this Court and the United States Courts of Appeals have upheld the imposition of the section 6653(a) addition to tax in other family trust cases involving 1976 and earlier tax years. See, e.g., Holman v. United States,supra;Vnuk v. Commissioner,supra;Luman v. Commissioner,supra;Vercio v. Commissioner,supra;Wesenberg v. Commissioner,supra. We see no reason for reaching a different result in the instant cases. We hold for respondent on this issue. Decisions will be entered *456 for the respondent.
Footnotes
1. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the years in issue. 2. In the notices of deficiency, respondent also determined deficiencies and additions to tax for 1975 and 1977.Petitioners have not disputed those deficiencies or additions to tax. Accordingly, 1975 and 1977 are not before us in either docket. ↩
3. The deficiency in docket No. 13770-80 consists of $28,989 in chapter 1 income tax, and $169 in chapter 2 self-employment tax.↩
4. The parties have stipulated that if the Court finds in its opinion that the trusts are not recognizable for Federal tax purposes, then the determinations of deficiencies for 1976 by respondent as set forth in the notices of deficiency are correct.↩
5. T.C. Memo. 1981-675↩. 6. T.C. Memo. 1980-568 and T.C. Memo. 1981-73↩. 7. T.C. Memo. 1980-558↩.
8. T.C. Memo 1979-164↩.